CAWLEY, Appellant, vs. LA CROSSE CITY RAILWAY COMPANY, Respondent.

*February 28 — March 20, 1900.*

(1) Stare decisis.    (2, 3) *Electric street railway: Injury to person driving upon track: Duty of motorman: Contributory negligence.*

1. The rules of law declared and the conclusion drawn therefrom by this court in an action by a wife alone for personal injuries must control, on the ground of *stare decisis,* in an action by the husband to recover for the same injuries, in so far as there is substantial identity in the material facts.

2. A motorman on an electric street car has a right to expect that the driver of a carriage who is turning towards the track in front of his car will desist from so doing when warned by the gong of the car, and is not bound, as an ordinarily careful man, to exert efforts to stop his car until after it becomes apparent that the warning is unheeded.

3. One who, with her ears muffled in a fur cap and coat, drove upon and along the track of an electric street railway for the purpose of passing a wagon, without looking back along the track more than 120 feet, was guilty of contributory negligence precluding a recovery for her injuries caused by a car striking the buggy from behind.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Affirmed.*

Action by plaintiff to recover his damages for the same injury to his wife which was under consideration in *Cawley v. La Crosse City R. Co.* 101 Wis. 145. At the close of the plaintiff's evidence the court directed a verdict for the defendant, from judgment on which plaintiff appeals.

*Ray S. Reid,* for the appellant.

For the respondent there was a brief by *Losey & Woodward,* and oral argument by *G. M. Woodward.*

DODGE, J. 1. The rules of law set forth in the former consideration of the events on which recovery is predicated, and the conclusion drawn therefrom, must control this case in so far as there is substantial identity in the material facts. This not upon the ground of *res adjudicata* (*Selleck v. Janesville,* 104 Wis. 570), but of *stare decisis.*

The narrative of events on which liability was predicated in the former case need not be repeated here, except so far as may become necessary for comparison. Here, as there, there was not only no direct evidence of any negligence on the part of the defendant, but there was the direct evidence of the motorman of the exercise of all usual diligence to avoid the accident after peril thereof became apparent. As in the former case, also, there was no evidence, even sug-

gested by plaintiff's counsel, from which negligence on the part of the defendant could be inferred, except that it is claimed omission of efforts by the motorman may be inferred from Mrs. Cawley's testimony tending to show that she traveled the distance requisite to pass two or three teams before she was struck by the car. On the former trial this contention was found to be so wholly overcome by other facts and circumstances that the jury could not legitimately have believed the fact to exist. One of those circumstances was that the man Bixby, whose moving woodrack and team she was attempting to pass, testified that her buggy was thrown behind his wagon. That fact is now absent, Bixby and his woodrack and team of horses have vanished, and instead thereof is a single woodrack and team driven by one John Dee, who, by the way, before the other trial had solemnly declared that he was not in the neighborhood and had no knowledge of the matter. He does not testify that the buggy fell behind his wagon, but that Mrs. Cawley's horses, at the time she was struck, were substantially even with his, and that the buggy was pushed along by the car so as to fall in front of his wagon. He does, however, testify to another fact which renders the presence of the injured woman on the track quite as brief as it need have been on Bixby's testimony, namely, that as Mrs. Cawley came trotting up to his wagon and swerved to the left to pass him he pulled up his team to allow her to do so. Thus, instead of being opposite a moving team, according to Bixby's testimony upon the former trial, she had only to pass one which was substantially stationary, and she had only gone so far in that effort as to have brought her horses alongside of his. The distance traveled after turning to the left to pass around this team could not, therefore, have exceeded fifty feet, probably not thirty, which would have occupied, at the rate of five miles an hour — a very moderate trotting speed — between seven and eight seconds. Mrs. Cawley estimates the

Cawley vs. La Crosse City R. Co.

time at from twenty to thirty seconds, but, of course, such estimates are extremely unreliable. The car, traveling, as stated, at some fifteen miles an hour, would have traveled about 150 feet in this same length of time, and obviously no inference of negligence is to be drawn from the fact that it had not been completely stopped in that distance; the motorman being entitled to expect, first, that one turning towards the track would respond to the gong and cease such movement, and being bound, as an ordinarily careful man, to exert efforts to stop his car only after the contrary became apparent. Such proximity of the car was entirely consistent with the evidence upon the trial under consideration, while Mrs. Cawley's evidence on the former trial, albeit somewhat indefinitely, tended to deny it; she there having testified that she looked down the whole length of track, which was about 2,400 feet, and saw no car. On the last trial she testified that her glance along the track extended but a short distance,— from 75 to 120 feet. We conclude, therefore, that the evidence on this trial — all from plaintiff's witnesses — quite as fully refuted her theory of a presence on the track in front of the car long enough to pass two or three teams, and that the record is equally barren of any showing from which negligence of the defendant could have been legitimately inferred by the jury, even if there had been no direct evidence of due diligence.

Some stress is laid by appellant's counsel on the fact that the evidence now discloses that Mrs. Cawley's buggy was struck on the inside of the left hind wheel, marks of the collision being there apparent. Of this the only significance is to establish that the buggy had completely gotten onto the track before the collision. This is not in any respect different from the situation on the former trial, where Bixby testified that the left hind wheel of the buggy was between the two tracks when struck, and is in no wise inconsistent with the view taken on the former trial, and above outlined on this.

2. The contributory negligence of Mrs. Cawley, which of itself would preclude recovery, is shown even more conclusively by the present record than by the former one. The muffling of her ears with a sealskin cap and coat, so as to make any pretense of a listening a travesty, is even more fully shown; and, as before pointed out, she does not on this trial pretend to have looked down the track in the direction from which the car came any considerable distance, while on the former trial her testimony might have been understood as declaring an observation of over some 2,400 feet.

On the same grounds, therefore, which led this court to the view before that no case was presented for submission to the jury, we reach the conclusion that upon the trial now under consideration the court was right in directing a verdict for the defendant.

*By the Court.*— Judgment affirmed.